DARWIN B. GIVENS, *Appellant,* v. COUNTY OF HILLS-BOROUGH, STATE OF FLORIDA, DANIEL J. GALVIN, AS CHAIRMAN, WALTER O. HOBBS, C. B. WARE, B. W. BRANCH AND J. D. POLLARD, AS COUNTY COMMISSIONERS OF HILLSBOROUGH COUNTY, FLORIDA, AND JOHN TRICE, *Appellees.*

1. The legislature has power by a curative act to authorize the issuance of county bonds notwithstanding a failure by the county to comply with some provision of the statute regulating the issue of such bonds, if the provision violated is one which could have been dispensed with in the enactment of the original statute.

2. The adjudication by a court that a proposed issue of county bonds is because of some irregularity of procedure unauthorized and void does not defeat the right of the legislature by subsequent curative act to authorize their issuance.

3. An act of the legislature relating to counties of a certain class, general in its terms and founded upon a proper and legitimate basis of classification, is general and not special legislation, though but a single county is embraced within the class affected by the legislation.

4. The notice of sale of county bonds required by section 596 of the Revised Statutes need not state that the bids therefor may be

payable in current funds or in evidences of indebtedness of the county.

5. Allegations in a bill filed to enjoin the issuance of county bonds questioning the regularity of the appointment of bond trustees for the proposed issue afford no ground for enjoining the issuance of the bonds.

This case was decided by the court *En Banc*.

Appeal from Circuit Court for Hillsborough county.

## *Statement.*

The county commissioners of Hillsborough county on the fourteenth day of August, 1901, passed a resolution for the issuance of county bonds to the amount of $400,000 for building hard surface highways and funding the outstanding indebtedness of the county. An election was held which resulted in a ratification of this resolution by the legal voters of the county, and the bonds were prepared and advertised for sale and a bid therefor accepted by the county officials. In February, 1903, before the bonds were issued by the county to the successful bidder a decree was rendered by this court, reported in *Hillsborough County v. Henderson*, 45 Fla. 356, 33 South. Rep. 997, perpetually enjoining the proposed issue of bonds because of irregularity in the resolution of the board of county commissioners upon which the proposed issue was based.

In the month of April, A. D. 1903, the following act was passed by the legislature and approved by the Governor:

"An act to legalize and validate any county bonds heretofore favorably voted upon and afterwards advertised for sale by any county of the State of Florida for the purpose of constructing macadamized and other hard surface highways in such county and to fund the outstanding indebtedness of any such county, or for either or both such purposes, and to cure any and all defects therein, and to permit the sale thereof as now provided by law.

*Be it enacted by the legislature of the State of Florida:*

SECTION 1.   Whenever any county bonds for the purpose of constructing macadamized and other hard surfaced highways in such county and to fund the outstanding indebtedness of any such county, or for either or both of such purposes, shall have heretofore been favorably voted upon at a county election held for such purpose, and afterwards advertised for sale, such bonds be and they are hereby declared legal and valid, and they shall not be held invalid on account of any irregularity in the proceedings taken prior to the advertisement of said bonds for sale, and all defects or other irregularities in such proceedings are hereby cured and the sale of such bonds is hereby authorized and permitted according to the provisions of Article 2, Chapter 2, Title 9, part 1 of the Revised Statutes of the State of Florida; and whenever any such bonds have been disposed of by the county authorities for value in accordance with said provisions of the Revised Statutes as subsequently amended, or have been offered for sale but have not been fully sold by delivery to the purchaser, then any and all such bonds so offered for sale or disposed of shall be of full force and effect and have the same validity as if no irregularity had occurred in the proceedings in regard to the issuance and sale of said bonds : provided always that this act shall not apply to any bonds issued by any county officer other than those authorized by said provisions of the Revised Statutes as so amended.

SECTION 2.   This act shall take effect immediately upon its approval by the Governor, or its becoming a law without such approval."

During the same session of the legislature a special act was also passed for the purpose of validating or authorizing the proposed issue of bonds, but this act it is not necessary to set out.

On the twenty-ninth day of May, 1903, the appellant; Givens, filed a bill setting up the above facts, and alleging that the county commissioners, purporting to act under the

authority of the statute above quoted, on the twenty-third day of April, 1903, met and advertised the sale of said bonds, and on the twenty-fifth day of May, 1903, after advertising the notice of sale as required by law, met for the purpose of receiving bids for the bonds, and accepted the bid of the defendant Trice for fifty of the bonds of the par value of $1,000 each, to be paid for in current money of the United States. The bill further alleged that the board of county commissioners was proceeding to carry out the proposed sale of the bonds, and threatening to deliver them to the said Trice, and that such action was illegal for various reasons alleged in the bill, and prayed that it be restrained by injunction from disposing of the bonds. The bill was afterwards amended by alleging further grounds for holding the proposed issue of bonds to be illegal. A demurrer was filed to the amended bill, the demurrer was sustained, and the complainant refusing to amend, the bill was dismissed. From this decree the complainant appeals to this court.

*F. M. Simonton* and *Solon B. Turman* for appellant.

*Philips & Philips, Gunby & Gibbons* and *R. W. Williams* for appellees.

MAXWELL, J. (*after stating the facts*).—This cause was argued before Division B, but as it involved a constitutional question, it was referred to the court *in banc* for decision.

In disposing of this case we shall confine ourselves to a consideration of those objections to the proposed issue of bonds which are insisted upon by the appellant in his argument, treating all other as abandoned.

I. The first objection urged to the power of the county to issue the bonds in question is "because the legislature of the State of Florida has no constitutional power to pass an act validating bonds that have already been declared null and void by a court of competent jurisdiction."

The contention of the appellant is that such legislation is a usurpation of judicial power by the legislature, and in contravention of the distribution of governmental powers made by the constitution of the State. If the curative act were one to declare that construction to be given some existing instrument, or declaring that an instrument construed by the courts in one way should be construed in another a different question would be presented from that with which we have to deal. Here no bonds were in existence, but it was proposed that certain bonds should be issued. The authority of the county officials to make the issue was questioned, and the court held that under the then existing conditions they were without such power. The curative act of the legislature did not question the correctness of this decision nor attempt to adjudicate the regularity of the previous acts of the county commissioners, but recognizing the binding force of the judgment of the court, undertook to confer authority where before there was none. The essential force of the act is contained in the clause "the sale of such bonds is hereby authorized and permitted according to the provisions of Article 2, Chapter 2, Title 9, part 1 of the Revised Statutes of the State of Florida."

This court has several times held such curative acts valid when passed before an adjudication by a court declaring the invalidity of the bonds. *Middleton v. City of St. Augustine,* 42 Fla. 287, 29 South. Rep. 421; *Potter v. Lainhart,* 44 Fla. 647, 33 South. Rep. 251. The fact that the court has declared their invalidity does not affect the right of the legislature to create the new power. *City of Jacksonville v. Basnett,* 20 Fla. 525. As was said by the United States Supreme Court in the case of *Utter v. Franklin,* 172 U. S. 416, 19 Sup. Ct. Rep. 183, "the fact that this court had held the original Pima county bonds invalid does not affect the question. They are invalid because there was no power to issue them. They were made valid by such power being subsequently given, and it makes no possible difference that they had been declared to be void under the

power originally given. The judgment in that case was *res adjudicata* only of the issue then presented, of the facts as they then appeared, and of the legislation then existing."

II. The second objection raised to the curative act of the legislature is that while in form a general act it is in fact special, and obnoxious to the provision of section 20 of article III of the constitution which prohibits special legislation "regulating the jurisdiction and duties of any class of officers, except municipal officers." The contention that the act is special rests upon the allegations in the bill that it applies only to past transactions, and that it affects only Hillsborough county and these particular bonds; that Hillsborough county was the only county in the State attempting to issue bonds for the purposes mentioned, and that this was known to the legislature in passing the act, and that no other county in the State can at any time bring itself within the provisions of the act.

These allegations, of course, upon demurrer to the bill are to be taken as true. The question then presented is whether such legislation is special legislation for one county, or general legislation founded upon a reasonable and legitimate basis of classification, and if the latter whether it will still retain this character though but one county is embraced within the class to which the act applies. The counties to which the act applies are those where the proposed issue has been favorably voted upon at a county election held for that purpose, and afterwards advertised for sale; in other words, to counties where the proposed issue, even though characterized by some irregularity of procedure, is acceptable to the people of the county who have ratified it, and to the officials of the county who have proceeded to carry the public will into effect. This seems a reasonable basis of classification.

Whether legislation may be regarded as general though but one individual comes within its terms has been considered by this court on two previous occasions. The first of these was in the case of *Ex parte Wells,* 21 Fla. 280,

where the acts under consideration were chapter 3606 of the acts of 1885, entitled "An act to dissolve municipal corporations under circumstances therein stated and to provide provisional governments for the same," and chapter 3607, amendatory thereof. Not only was the city of Pensacola the only municipality in the State which came within the terms of those acts, but the necessities of that city had led to the enactment of the acts, as was recognized by the court, which said "this court will not perpetrate an insincerity by denying that the reputed condition of that city led to its enactment." Yet the court held that as the classification was a reasonable one, that circumstances did not deprive the act of its character as general legislation, saying that it was "clear that the mere fact that there is but one of a class does not render legislation covering such class special," and citing many cases to sustain its ruling.

In that case, however, the act was not confined to then existing conditions or past transactions, and there was a possibility that other cities might thereafter be brought within the terms of the act, and upon this feature the appellant distinguishes that case from the case at bar.

This contention is disposed of by the latter case of *Bloxham, Comptroller, v. Florida Cent. & P. R. Co.,* 35 Fla. 625, 17 South. Rep. 902, where the act under consideration was chapter 3558 of the acts of 1885, entitled "An act to provide for the assessment and collection of taxes on railroads and the properties thereof for the years 1879, 1880 and 1881, as to which there was no assessment." The classification of property made by this act and of owners affected by it was of railroads whose property had not been assessed for the years mentioned. No others were within its terms, and as it was based upon past conditions none could thereafter by change of circumstance be embraced therein. The court held the basis of classification a proper one and the act general and not special, and that this was true even though the roads of but one company came within the act. "It might be that the railroads of the complainant is the only

property affected by the act. Such a state of affairs would not make it a special law. Speaking upon a similar contention this court has also quoted with approval in the case of *Ex parte Wells, supra,* from the Supreme Court of New Jersey, the following language: 'A law so framed (i. e., general in its terms) is not a special or local law, but a general law without regard to the consideration that within the State there happened to be but one individual of the class or one place where it produces effects.' " This case was upon appeal affirmed by the Supreme Court of the United States.

The principle underlying these decisions is sound. The basis of the division into classes must be one founded in reason, and not an arbitrary selection of individuals; but where the classification is well founded and the legislation general in terms, the mere incident that but one of the class exists should not defeat the right of the legislature to deal with the subject, nor tie its hands until a second individual shall be added to the class.

III. The notice of sale of the bonds, calling for bids therefor, published by the board of county commissioners did not state that the bids should be payable either in current money or in evidences of indebtedness of the county. This is urged as a ground for enjoining the issue of the bonds upon the theory that it prevented the sale of bonds at par to the holders of the outstanding indebtedness of the county. The statute does not require that the advertisement for bids should be framed as contended. On the other hand, it requires the bidders, who are presumed to act with some knowledge of the law and of their rights, to specify in their bid whether it is in current money or in evidences of indebtedness. The allegations in the bill upon this point seem framed upon the idea that such part of the bonds as may go to pay the outstanding indebtedness of the county can not be sold below par. This, however, is not insisted upon in argument.

The bid made by Trice did not state the manner of payment contemplated, but this court has construed such a bid

as one payable in current funds (*Potter v. Lainhart*, 44 Fla. 647, 33 South. Rep. 251), and it was so accepted by the board. The bill alleges upon information and belief that the said bid if finally accepted will be paid in whole or in part by existing evidences of indebtedness of the county. This is said in the brief of counsel to be unlawful, but without further aid from them we are unable to find therein a basis for the injunction prayed.

IV.   The allegations in the bill questioning the regularity of the appointment of the bond trustees for the proposed issue of bonds concern only the proper disposition or administration of the proceeds of the bonds after they shall have been sold, and afford no ground for enjoining their issuance. *City of Tampa v. Salomonson*, 35 Fla. 446, 17 South. Rep. 581; *Middleton v. City of St. Augustine*, 42 Fla. 287, 29 South. Rep. 421.

The decree of the court below is affirmed.