JOHN CRANOR, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF VOLUSIA COUNTY, W. C. CANNONS AND R. T. LONG, *Appellees.*

CURATIVE STATUTES—EFFECT ON COUNTY CONTRACTS IRREGULARLY MADE.

Where a bill, filed to restrain and enjoin the execution of a contract made by a county for the construction of hard-surfaced

VOL. 54, JUNE TERM, 1907. 527

Cranor v. Commissioners Volusia County et al.—Opinion of Court.

public roads, alleges illegalities and irregularities against such contract in respect only of matters and features connected therewith that the legislature had the power to dispense with in the first instance, an act passed by the legislature, subsequently to the making of such contract, ratifying, validating and approving it, purges it of all such alleged illegalities and irregularities; and such bill should be dismissed upon the passage of such validating act, though it had been filed prior to its enactment.

This case was decided by Division B.

Appeal from the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the court.

*D. L. Gaulden,* for appellant;

*Landis & Fish,* for appellees.

TAYLOR, J.—The appellant, as complainant below, filed his bill in the circuit court of Volusia county in chancery against the board of county commissioners of said county and against W. C. Cannons and R. T. Long, the appellees as defendants below, in which he alleged in substance that he, the complainant, was a tax payer in said county of Volusia and as such interested in the proper expenditure of the public funds of said county. That the said board of county commissioners after resolving to construct a hard surfaced or macadamized public road from the town of DeLand to the town of Daytona in said county advertised for bids for the building and grading or surfacing thereof and in said advertisement specified that said work should be completed by January 1st,

1908. That in response to such advertisement various parties filed bids for the work, and that at least two of these bids were much lower than the bids put in by the defendants W. C. Cannons and R. T. Long, notwithstanding which, the said board ignored such lower bids, and in secret session awarded the contracts to said Cannons and Long at their higher bid, and further illegaly contracted with them for the completion of said work by January 1st, 1909, when the advertisement for bids specified the completion of the work to be on January 1st, 1908. That the total amount of funds of the county in its treasury available for such public roadwork amounted to only $15,000, and that the tax levy for such road purposes for the year 1907 will bring a total of not more than about $20,000, and that said board has illegally contracted for the building of said road at an amount far in excess of its funds in hand or possible to be derived from taxation during the course of several years, said contracts calling for about $76,250, and that said board proposes illegally and without authority of law to draw warrants on the county treasurer in payment for such work when there will be no available funds in the county treasury with which to pay them. These in substance are the main complaints of the bill, which prays for injunction, temporary and permanent to restrain said board and the two other defendants, Cannons and Long, from proceeding with the work under the contracts entered into with them by said board on the 17th day of April, A. D. 1907.

All of the defendants demurred to this bill, which demurrers were, on the 3rd day of May, 1907, sustained by the court with leave to the complainants to amend their bill. From these rulings the complainant appeals here.

Subsequently to the making of this alleged contract,

VOL. 54, JUNE TERM, 1907.          529

Cranor v. Commissioners Volusia County et al.—Opinion of Court.

and to the filing of the bill in this cause, and to the making of the orders appealed from therein, but prior to the taking of the appeal herein, the legislature of Florida at its session of the present year 1907, enacted Chapter 5675, the first section of which is as follows:

"Section 1. That all acts of the county commissioners of the several counties of the state of Florida, relative to the laying out, grading, constructing, building, repairing, paving and making contracts in relation to the same, of paved, macadamized or rock public highways, roads and boulevards in the counties of the state be, and the same are hereby legalized, ratified, confirmed, validated and approved of in all respects." Section two of the same act repeals all laws or parts of laws in conflict with its provisions; and the third and last section of the act gives it immediate effectiveness.

This legislation is broad, comprehensive and sweeping in its provisions and includes within its terms the contracts involved in this suit, it ratifies, legalizes, confirms, validates and approves said contracts in all respects. Whether or not at the time these contracts were made the law required such work to be let to the lowest bidder after advertisment of notice for bids, and whether or not all such contracts should have been awarded in open public meetings of the board of county commissioners, and whether or not the amount of money to be paid for the work under such contracts should have been limited by the amount on hand in the county treasury, and whether or not the fulfillment of such contracts will necessitate the drawing of county warrants upon the treasurer in the absence of funds to pay them, can now make no difference with the contracts under discussion after the enactment of this validating statute; since all of the alleged illegalities and irregularities in connection with the awarding and making of such con-

tracts consist of matters that the legislature had the power to dispense with in the first instance, and, under the established rule, it has the power to ratify, validate and approve such contracts and thereby to purge them of all defects, illegalities and irregularities in all such respects. So that now it can make no difference in so far as these contracts are concerned whether or not the court below erred in its ruling sustaining the demurrers to the complainant's bill complaining of such contracts. This court is bound to take judicial notice of the said validating act of the legislature, and to give it due recognition and effect. In consequence of such legislation the complainant now has no standing in court or right to any relief by reason of any of the matters complained of in his said bill. A forceful illustration of the effect of such legislative validation of past official action will be found in the case of Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88. From that case it will be found that this court in a former case of Hillsborough County v. Henderson, 45 Fla. 356, 33 South. Rep. 997, had adjudged a certain proposed issue of bonds by said county of Hillsborough to be illegal and unauthorized because of irregularities in the antecedent steps leading up to their issue, and had directed a perpetual injunction to restrain their issuance and sale, and that subsequently to such decision the legislature had enacted a statute validating, ratifying and approving such issue of bonds, and that in the first cited case, subsequently to such curative act, this court held that such curative act gave validity and effectiveness to such issue of bonds notwithstanding the prior decision here adjudging them to be illegal. It follows from what has been said that the decrees appealed from must be and are hereby affirmed at the cost

of the appellant with directions to the chancellor below to dismiss the bill in said cause.

HOCKER and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHIT-FIELD, JJ., concur in the opinion.